The opinion of the court was given March 18th 1844.
Hubbard, J.
It is objected by the plaintiffs, that the note upon which a dividend is demanded is accommodation paper, and that Randall therefore stands in no better situation than Yeazie himself would, if he were now the claimant. But even if it were an accommodation note, the validity of the objection would depend upon the circumstances under which Randall received the note; for though, as between the payee and maker, such a note may be without consideration, yet the bona fide holder of accommodation paper, received while it is running to maturity, has the same just claim on the maker, as though the note was given for value. In the present case, it appears that Rogers, Devens & Co. were in the habit of exchanging notes with Veazie, and that the paper now in question was an exchange note. But it is well settled that exchange notes, though made for the accommodation of the parties, are not what is known and recognized as accommodation paper. There is a mutuality in the one case which does not exist in the other, and the exchange is in law a negotiation which makes a good con *219 sideration between the parties, each for the other. Rolfe v. Caslon, 2 H. B. 570. Cardwell v. Martin, 9 East, 190. Chit. on Bills, (6th ed.) 443.
Veazie negotiated the note to Randall, and the makers may oe responsible to him, notwithstanding Veazie’s liability to them; for the issue is not, as the plaintiffs would contend, between Veazie and Rogers, Devens &. Co., but between Randall and them. This note was indorsed by Veazie to Randall, as collateral security for a loan of $400, made by Randall May 28th 1836, and for which a memorandum check was given, payable in June. This check, the plaintiffs allege, has been fraudulently altered, and the debt thereby discharged; and by reason of it, Randall has no claim to recover any thing upon the collateral security. The fact of such fraudulent alteration is denied on the part of Randall. Yet he contends that, if the fact were so, and if he could not recover on the check itself, still he coma maintain an action for the money actually lent. But this position is untenable, and for good reason. Where the party has made an express contract, he cannot resort to an implied one; and if no action can be maintained on the express contract, by reason of the fraud of the plaintiff himself, he is without remedy. Otherwise, notes and bills might often be tampered with, both as to their amounts and times of payment, if, on detection of the fraud, the party could avail himself of an implied assumpsit to recover his demand.
On the facts, however, as they appear in the master’s report, the case does not turn on this point. The check given by Vea-zie to Randall was put in suit in the court of common pleas, and judgment was rendered in favor of Randall. Afterwards a writ of review was sued out of the supreme judicial court, and two errors were assigned as the, grounds for reversing the judgment: 1st, that the check was substantially a promissory note, and therefore entitled to grace ; and 2d, that there was a fraudulent alteration of the time of payment of the check. But before a trial took place, the parties came to an agreement, either that the writ should be dismissed, and the judgment of the common pleas remain in force, or that the judgment should be reversed, *220 and the original contract or check be confirmed and held good, as between them. There is conflicting evidence as to which was the agreement. It is unnecessary, however, to delay the cause to ascertain the fact; for if the judgment is in force, then it is binding on the parties; but if the agreement was, to have the judgment reversed, and the original contract confirmed, and the objection to any alteration in it waived, then there was a good consideration for such agreement, in the relinquishment of the bond given for seeming the original judgment, in case it should not be reversed. And we think that, as between these parties, Randall may show the agreement; and we are of opinion that his collateral security in the note is not affected by relinquishing the bond given by Yeazie, on his obtaining a super-sedeas of the execution. As between Randall and Yeazie, then, a good demand exists for the $400 and interest, and the creditors of Rogers, Devens & Co. cannot interpose a defence which Veazie would not be permitted to make.
Another objection has been taken to the allowance of the full amount of the $ 400, on the ground that usurious interest was taken by Randall at the time of the loan. If Veazie had been the insolvent assignor in this case, and the claim was made upon his assignee, the objection, unless barred by the agreement, might prevail. But here the claim is upon the assignees of Rogers, Devens & Co., on the note given by them for a valuable consideration, and which came lawfully into the possession of Randall. The note upon which the dividend is demanded was not made to secure the loan of $400, nor was it in any way originally connected with the usurious contract; and, that contract not being void, the creditors of Rogers, Devens & Co. cannot raise the objection, there being no usury taken or reserved in their note now held by Randall.
A dividend is claimed by Randall on the full amount of the note of $ 1242-56 ; but, it appearing by the report, that the note was made over to Randall to secure a debt of $400 only and interest, and that, if he should recover a larger amount than that, he would be accountable to Veazie, or his assignee, for the surplus, we think there is an equity existing here, of which the *221 creditors of Rogers, Devens & Co. can avail themselves ; as Veazie is indebted to that firm on the balance of their accounts, arising in great measure out of their exchange paper. In conformity with these views, Randall is to be allowed his dividend on the note, provided the same does not exceed his debt of $400 and interest, to which amount he is limited; and the case is to be remitted to the master, to make the allowance accordingly.